

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT STATKIEWICZ        *

                        *

         v.                *    Civil No. JFM-98-2208

                        *

THE HENDERSON GROUP, INC.,     *

ET AL.                     *

                *****

### MEMORANDUM

Plaintiff Robert Statkiewicz has sued defendants The Henderson Group, Inc., Henderson

Chadds Ford Associates, L.P., and Wilbur C. Henderson, seeking a declaratory judgment that he

is entitled to certain real estate brokerage commission. The parties have filed cross-motions for

summary judgment. Defendants' motion will be granted, and plaintiff's motion will be denied.

I.

In late 1983 or early 1984 defendants approached Statkiewicz, a resident of Maryland, to

act as their consultant in connection with the development of a shopping center in Chads Ford,

Pennsylvania. In early 1984 Statkiewicz began to perform consulting services for defendants and

offered to perform leasing services for the proposed shopping center. Later in 1984 defendants

requested that Statkiewicz act as the leasing agent for the shopping center. According to

Statkiewicz, in October 1984, defendant Wilbur Henderson and Patrick Tomlinson, the executive

vice president of the Henderson Group, reached an understanding on the compensation

Statkiewicz would receive as leasing agent. Statkiewicz was to be paid 6% of the rents collected

for each tenant he could procure on a monthly basis.

Although the shopping center did not open until September 1987, Statkiewicz and his

staff began performing their leasing services in 1984. He continued his work over the course of

the next several years. In 1988 Statkiewicz began receiving commissions for the tenants he

procured for the shopping center. Over the next nine years he was paid over $520,000 in

commissions. In August 1997 defendant stopped paying him although tenants whom he had

procured continued to pay rent to defendants.

The basis for defendants' cessation of commission payments to Statkiewicz was that they

learned that on February 28, 1986, his Pennsylvania real estate license (which he had held since

approximately 1970) expired. Further, defendants learned that Christopher Gavrelis and

Frederick Paine, two agents employed by Statkiewicz who had worked with him in procuring

tenants for the shopping center, never had a Pennsylvania salesperson's license.

II.

A.

The Pennsylvania Real Estate Licensing and Registration Act ("the Act"), 63 Pa. Cons.

Stat. Ann. §§ 455.101 et. seq., subjects real estate brokers and salespersons to licensing

requirements and prohibits unlicensed brokers and salespersons from conducting business.[1]

Section 455.301 makes it unlawful for any person to conduct business as a real estate broker or

salesperson without a license; § 455.303 subjects any person who does engage in unlicensed

---

[1]Statkiewicz suggests that Pennsylvania law does not apply because he alleges that he, Gavrelis, and Paine performed a majority of their leasing services for defendants in Maryland. Defendants contest this allegation, particularly as to the tenants as to whom Statkiewicz is taking commissions. A dispute of fact may exist on the point. However, if it does, the dispute is not material. As defendants note, an "either/or" situation is not presented. Statkiewicz and his staff may well have been subject to Maryland law and licensing requirements as to activities in which they engaged in Maryland. However, Statkiewicz does not deny that he, Gavrelis, and Paine engaged in some activities in Pennsylvania, and those activities clearly were subject to Pennsylvania law.

activity to criminal penalties; and § 455.305 authorizes the Real Estate Commission to levy civil

penalties for violation of the Act.

In light of the statutory provisions, it would seem that this case would fall rather easily

into the ambit of the well established principle that contracts contrary to law will not be enforced.

See generally Watral v. Commonwealth, 88 Pa. Cmwlth. 1, 5, 488, A.2d 378, 381, aff'd 513 Pa.

61, 518 A.2d 1158 (1985); Rittenhouse v. Barclay, White, Inc., 425 Pa. Super. 501, 507, 625

A.2d 1208, 1211 (1993).

> Section 302 of the Act, however, provides a complicating factor.  That section provides:
>
> No action or suit shall be instituted, nor recovery had, in any court of this
> Commonwealth by any person for compensation for any act done or service
> rendered, the doing or rendering of which is prohibited under the provisions of
> this act by a person other than a licensed broker, salesperson, cemetery broker,
> cemetery salesperson, campground membership salesperson, time-share
> salesperson, builder-owner salesperson or rental listing referral agent, unless such
> person was duly licensed and registered hereunder as broker or salesperson at the
> time of offering to perform any such act or procuring any promise or contract for
> the payment of compensation for any such contemplated act or service.

63 Pa. Cons. Stat. Ann. § 455.302.

The "unless" clause at the end of this section expressly requires a person seeking to

recover compensation for brokerage services only to have been licensed at the time of offering to

perform such services or at the time of procuring any promise or contract for the payment of

compensation for any such services.  Undisputably, Statkiewicz held a Pennsylvania license in

1984 when he offered to perform brokerage services for defendant.  Likewise, viewing the

evidence most favorably to him, Statkiewicz was licensed in Pennsylvania when the parties

entered into their agreement for the payment of such services.  Therefore, Statkiewicz argues that

under the plain language of § 302, he is entitled to recover.  1 Pa. Stat. Ann. §1921(b). ([W]hen

3

the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit);  Oberneder v. Link Computer Corp., 696 A.2d 148, 150, 548 Pa. 201, 204 (Pa. 1997) ("Only if a statute is unclear may a court consider the legislature's intent by reviewing the acts necessity and object, the circumstances under which it was enacted, and other factors.")

Further complicating the issue is the fact that the statutory provision that § 302 was enacted to replace, 63 Pa. Cons. Stat. Ann. § 446, contained a prohibition broader than the express prohibition set forth in § 302.  That section barred recovery of compensation for brokerage services "unless . . . [the] person, copartnership, association or corporation [seeking compensation] was duly licensed hereunder as real estate broker [sic] at the time of the doing of such act or the rendering of such services."  Statkiewicz argues that this legislative history is significant since under Pennsylvania law a "change in the language of the statute ordinarily indicates a change in legislative intent."  Meier v. Meleski, 670 A.2d 755, 759 (1996).

While Statkiewicz's argument is logical, the logic is sterile. Recognizing that § 302 "substantially reenacted the prior language," Wilkens v. Heebner, 331 Pa. Super. 491, 496, n.3 480 A.2d 1141, 1143, n. 3 (1984), Pennsylvania courts have held § 302 continues to preclude any recovery of any compensation by an unlicensed broker.  Winthrop & Co., Inc. v. Martin Milgrom, 447 Pa. Super. 140, 145, 668 A.2d 557, 559 (1995).  By ignoring these cases and focusing narrowly upon the language change effected by § 302, Statkiewicz loses sight of the fact that the statutory reenactment of which § 302 was a part was intended to broaden regulatory control over real estate brokers and salespersons.  See generally Comment Pennsylvania Real Estate Licensing Act of 1980, 54 Temple Law Quarterly 806 (1981); 1979 Leg. Journal at 669.

4

Morever, as defendants vigorously contend, Statkiewicz's reading of § 302 would lead to an absurd and unreasonable result - an outcome directly at odds with another canon of statutory construction well established under Pennsylvania law. 1 Pa. Stat. Ann. § 1922 (1999). If his interpretation of the language were correct, a broker whose license had been revoked for fraud could thereafter engage in unlicensed activities and recover commissions as to all listing agreements obtained before the revocation.[2]

All of this said, defendants' position still must be reconciled with the language of § 302 which, as indicated above, only requires by its express terms that a broker be licensed "at the time of offering to perform" any brokerage services or "at the time of . . . procuring any promise or contract for the payment of compensation for any such contemplated act or service." Defendants suggest that the phrase "at the time of offering to perform" should be read as meaning "at the time of performance." I cannot accept this reading. It is not consistent with what the language plainly says.

For me, a far more satisfactory explanation of the statutory language is that the General Assembly omitted reference to that which is obvious. In my view, by requiring a broker seeking compensation for his services to be licensed at the time he offered to perform or at the time he procured a contract to perform, the General Assembly did not intend to imply that he need not be

---

[2]I recognize that since this case involves a commercial contract entered into between sophisticated parties of equal bargaining power, it does not involve the most egregious conduct the Pennsylvania Act is intended to prevent. In Gruber v. Owens-Illinois, Inc., 899 F.2d 1366, 3rd Cir. 1990), the Third Circuit referred to the General Assembly's "commitment to preventing brokers and their employees from gouging, exploiting, and abusing ordinary consumers: the buyers and sellers of homes, conodomina, and the like." Id. at 1373. However, the Act does not draw a distinction between commercial real estate brokers and residential real estate brokers, and both categories of brokers are equally subject to licensing regulations.

licensed at the time he actually performed. To the contrary, I believe it is an unspoken premise

of § 302 that a broker must be licensed at the time of actual performance. What § 302 expressly

requires is something more, i.e. is that in addition to being licensed at the time of actual

performance, a broker must be licensed at the time he offers to perform and at the time he obtains

a contract to perform.

C.

Kreider v. Kleinfelter, 314 Pa. Super. 571, 461 A.2d 304 (1983) supports this reading of §

302. In Kreider one Allen Brown, a salesperson, had sued to enforce a commission agreement.

Section 446, the predecessor to § 302, was then in effect, and it permitted only brokers to bring

suit to enforce commission agreements. Therefore, Brown's suit was dismissed. His employer,

who was a licensed broker, then instituted a second action. The trial court found his claim barred

by res judicata.

On appeal the court found that res judicata did not apply and reinstated the broker's cause

of action. The court went on to say, however, that if . . . Brown was not a licensed salesperson,

the alleged contract would be wholly void and unenforceable as to any party, pursuant to a

statutory inability to enter into the agreement." The court thus drew a distinction between the

question of the standing of a plaintiff to sue and the question of the underlying legality of the

agreement upon which his suit is based.

The Kreider court cited the predecessor of § 301 in support of the proposition that the

underlying contract there involved would be void and unenforceable if Brown was not a licensed

salesperson. Section 301 is at least as broad as its predecessor in rendering unlawful unlicensed

brokerage activities. Therefore, to construe § 302, as Statkiewicz would construe it, as

6

permitting him to file suit to recover compensation would be to attribute to the legislature an

entirely vain act. In effect, he would be conferred standing to bring an action that he could never

win because the agreement upon which his claim is based is unenforceable. Accordingly, it is far

more reasonable to infer that section 302 rests on the premise that a person who is unlicensed at

the time he provides brokerage services cannot sue to recover compensation for those services.

In any event, even if § 302 does pointlessly confer such standing, the distinction drawn in

Kreider between standing and underlying illegality precludes Statkiewicz from recovering here.[3]

　　　　For these reasons, I find that Statkiewicz may not recover compensation for the brokerage

services he rendered while he was not licensed in Pennsylvania. A separate order effecting the

rulings made in this memorandum is being entered herewith.


Date:  October 28, 1999

J. Frederick Motz
United States District Judge


---

[3]Defendants also contend that even if Statkiewicz's own unlicensed status does not
prohibit the institution of this suit, his recovery is barred by the actions of his employees,
Christopher Gavrelis and Frederick Paine, who were never licensed in Pennsylvania. I need not
decide that question. I note, however, that in C.B. Snyder Realty Co. v. Cheryl-Noonan, Inc.,
261 F.2d 269 (3rd Cir. 1958), upon which Statkiewicz relies in countering defendants' contention,
the unlicensed salespersons did not perform any sales activities whatsoever within Pennsylvania.

7

### UNITED STATES DISTRICT COURT
#### DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
FAX (410) 962-2698

_____ FILED        _____ ENTERED
_____ LODGED       _____ RECEIVED

OCT 28 1999

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

October 28, 1999

Memo to Counsel Re: Robert Statkiewicz v. The Henderson Group, Inc.
Civil No. JFM-98-2208

Dear Counsel:

    Enclosed please find a memorandum and order I am entering today granting defendants' motion for summary judgment.

    I am sorry for the delay in issuing this opinion. As you will see, the delay was caused not because I was engaging in scholarly research but because it took a long time for the issues to settle in my mind and for me to reach a conclusion with which I am comfortable.

                    Very truly yours,

                    J. Frederick Motz
                    United States District Judge